# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| DAVID H. DOTSON,<br>Plaintiff | CIVIL ACTION |
|---|---|
| VERSUS | NO. 17-14063 |
| JOHN PRICE, ET AL.,<br>Defendants | SECTION: "E" (3) |

## ORDER AND REASONS

Before the Court is a motion for partial summary judgment, filed by Plaintiff David H. Dotson.[1] Defendant Atlantic Specialty Insurance Co. ("Atlantic") opposes.[2] At the pretrial conference in this matter, the parties agreed there are no genuine disputes of material fact.[3] For the following reasons, the Court **GRANTS** Dotson's motion for partial summary judgment.

## BACKGROUND

On January 19, 2016, Dotson filed the instant automobile accident personal injury suit against John Price and State Farm Mutual Automobile Insurance Company.[4] Progressive Casualty Insurance Company, Dotson's underinsured motorist insurer, was joined to the suit on September 6, 2017.[5] Atlantic was named as an additional Defendant on November 3, 2017.[6] The case was removed to this Court on December 1, 2017.[7] The only remaining Defendants are Atlantic and Progressive.

---

[1] R. Doc. 56.
[2] R. Doc. 64.
[3] R. Doc. 102 at 1.
[4] R. Doc. 1-4.
[5] R. Doc. 1-5.
[6] R. Doc. 1-7.
[7] R. Doc. 1.

1

At issue in the instant motion are two insurance policies issued by Atlantic to Pitts & Sons, Inc. ("Pitts"), which was Dotson's employer at the time of the accident. The original policy, bearing number 613-00-06-73-0000 ("First Policy"), was effective from December 13, 2013 through December 13, 2014.[8] No waiver of uninsured motorist coverage ("UM waiver") was executed in connection with this policy.[9] The renewed policy, bearing number 613-00-06-73-0001 ("Second Policy"), was effective from December 13, 2014 through December 13, 2015.[10] A UM waiver form was executed in connection with this policy.[11]

On April 10, 2019, Dotson filed the instant motion for partial summary judgment.[12] He argues he is entitled to judgment as a matter of law that the Second Policy provides him a limit of $1,000,000 of UM coverage.[13] Dotson argues his employer, Pitts, did not waive uninsured motorist coverage beyond $100,000 because the waiver form produced does not comply with Louisiana law prescribing specific requirements for valid waivers of UM coverage. Atlantic opposes.[14]

---

[8] R. Doc. 97-2.
[9] Plaintiff provided R. Doc 56-4, which is a UM waiver form not signed by Pitts or its legal representative. Plaintiff asserts this document is associated with the First Policy. R. Doc. 56-1 at 6. Defendant does not contest this assertion. The Court notes the document bears the policy number of the Second Policy. In any event, Atlantic Specialty Insurance Co.'s opposition to Plaintiff's Motion for Summary Judgment does not rely on this document to show that uninsured motorist coverage was waived, so the discrepancy is not material.
[10] R. Doc. 97-4.
[11] Plaintiff also provided Doc 56-5, associated with the Second Policy, but it does not include Atlantic's name or the number identifying this specific policy. Atlantic's opposition to Plaintiff's Motion for Summary Judgment does not rely on this document to show that uninsured motorist coverage was waived.
[12] R. Doc. 56.
[13] *Id.*
[14] R. Doc. 64.

In Louisiana, underinsured motorist coverage extends to persons "occupying" a covered vehicle.[15] The Second Policy provides that, if the Named Insured is a corporation, "then the following are 'insured': Anyone 'occupying' with the Named Insured's express or implied permission a covered 'auto' . . . .[16] Dotson, who was driving Pitts' insured truck within the scope of his employment, is therefore covered under the Second Policy and entitled to the benefits of the uninsured motorist insurance.

On June 11, 2019, Atlantic filed a supplemental memorandum, attaching the declarations pages and endorsements associated with the First and Second Policies.[17]

At the pretrial conference in this matter,[18] the parties agreed there are no genuine issues of disputed material fact, and the controlling legal issue is whether the following documents are sufficient to effect a waiver of uninsured motorist coverage by Pitts:

(1) the declarations sheet for the First Policy;[19]

(2) the endorsement for the First Policy;[20]

(3) the declarations sheet for the Renewed Policy;[21]

(4) the endorsement for the Renewed Policy;[22] and

(5) the UM waiver associated with the Second Policy.[23]

---

[15] WILLIAM SHELBY MCKENZIE & H. ALSTON JOHNSON, 15 LA. CIV. L. TREATISE, § 4:14 (4th ed.).
[16] R. Doc. 97-4.
[17] R. Doc. 97.
[18] R. Doc. 101 at 1–2.
[19] R. Doc. 97-1.
[20] R. Doc. 97-2.
[21] R. Doc. 97-3.
[22] R. Doc. 97-4.
[23] R. Docs. 56-5.

3

## **LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[24] "An issue is material if its resolution could affect the outcome of the action."[25] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[26] All reasonable inferences are drawn in favor of the nonmoving party.[27] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[28]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[29] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[30]

---

[24] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[25] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[26] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[27] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[28] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[29] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[30] *Celotex*, 477 U.S. at 322–24.

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[31] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[32] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[33] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[34] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce

---

[31] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322–24, and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[32] *First Nat'l Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[33] *Celotex*, 477 U.S. at 332–33.
[34] *Id.*

additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."35 "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."36

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"37

## ANALYSIS

La. R.S. § 22:1295(1)(A)(i) provides, "In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits" of the policy unless the parties execute a valid waiver of UM coverage.38 La. R.S. § 22:1295(1)(a)(ii) lays out the requirements for an insured to validly waive UM coverage, providing:

> [A] rejection [of UM coverage], selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects

---

35 *Id.* at 332–33, 333 n.3.
36 *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.
37 *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 (5th Cir. 1992)).
38 La. R.S. § 22:1295(1)(A)(i).

6

economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage.[39]

In *Duncan v. U.S.A.A. Insurance Co.*, the Louisiana Supreme Court held an insured must comply with the following requirements in order to effect a valid waiver of UM coverage:

> (1) initialing the selection or rejection of coverage chosen;
> (2) if limits lower than the policy limits are chosen (available in options 2 and 4) then filling in the amount of coverage selected for each person and each accident;
> (3) printing the name of the named insured or legal representative;
> (4) signing the name of the named insured or legal representative;
> (5) filling in the policy number; and
> (6) filling in the date.[40]

After *Duncan*, the Louisiana Commissioner of Insurance ("the Commissioner") promulgated a bulletin and sample form making optional the inclusion of a policy number on a UM waiver form, but making mandatory the inclusion of the insurer's name.[41] Otherwise, the requirements for a valid UM waiver form remain the same.

The current requirements, as modified by the updated form, are as follows:

> (1) initialing the selection or rejection of coverage chosen;

---

[39] La. R.S. § 22:1295(1)(a)(ii).
[40] 2006-363 (La. 11/29/06), 950 So. 2d 544, 551.
[41] The bulletin and form are available on the Commissioner's website, LOUISIANA DEP'T OF INS., BULLETIN NO. 08-02 (Aug. 29, 2008), and the Court takes judicial notice of them, *see* FED. R. EVID. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). The bulletin and form also are attached to Plaintiff's motion. R. Doc. 56-3.

    Prior to the Commissioner's issuance of the bulletin and the form, the Louisiana Supreme Court required the UM waiver form to list a policy number if it was available when the form was signed. *See Gray v. Am. Nat. Prop. & Cas. Co.*, 2007-1670 (La. 2/26/08), 977 So. 2d 839, 847 n.2. The bulletin and sample form subsequently issued by the Commissioner clarify that listing a policy number is now optional.

> (2) if limits lower than the policy limits are chosen (available in options 2 and 4) then filling in the amount of coverage selected for each person and each accident;
> (3) printing the name of the named insured or legal representative;
> (4) signing the name of the named insured or legal representative;
> (5) filling in the insurer's name, the group name, or the insurer's logo; and
> (6) filling in the date.

In this case, the UM waiver form associated with the Second Policy [42] contains the insured's initials next to the chosen coverages, the printed name of the insured, the signature of the insured, and the date, satisfying requirements 1, 3, 4, and 6. The insured did not write in the lower amount of coverage it sought, thereby failing to comply with requirement 2.[43] Additionally, the box designated to contain the insurer's name, group name, or insurer's logo is not filled in, failing to comply with requirement 5.[44] As a result, the waiver is ineffective under Louisiana law.

Atlantic nevertheless argues genuine issues of material fact preclude summary judgment because Pitts selected a UM limit of $100,000.00 per accident in connection with the First Policy.[45] Atlantic supports its argument with the affidavit of its representative, Elizabeth Wisniewski, in which she states that endorsements and declarations sheets associated with the First and Second Policies show that Pitts' UM coverage is limited to $100,000.00 per accident.[46]

---

[42] R. Doc. 56-5.
[43] *Id.*
[44] *Id.*
[45] R. Doc. 64 at 8.
[46] R. Doc. 64-3.

In *Duncan*, the Louisiana Supreme Court made clear that intent to waive UM coverage is not sufficient to effect a waiver of UM coverage, and compliance with the formal requirements of law is necessary.[47] The Court explained:

> The expression of a desire not to have UM coverage, however clear, does not necessarily constitute a valid rejection if the expression of rejection does not meet the formal requirements of law . . . the insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver.[48]

In this case, the UM waiver produced by Atlantic does meet requirements 2 and 5. Whether or not Pitts intended to waive UM coverage, the waiver is invalid.

Finally, Atlantic cites two cases addressing whether *valid* waivers of UM coverage carry over to subsequent policy renewals. It first cites *Maatki v. Moore*, in which an employee sought to recover under his employer's UM policy for damages he sustained in a motor vehicle accident.[49] The plaintiff's personal UM insurer argued plaintiff's employer's UM insurer should be held to the limits of its policy because the employer validly waived full UM coverage in its initial policy, and did not execute another waiver in connection with the renewed policy in effect at the time of the accident.[50] The court found the Louisiana UM statute does not require an insured to execute additional waivers for each renewal of the policy when the insured had rejected coverage or selected lower limits in a previously issued policy.[51] In *Maatki*, the first UM waiver for the employer's policy was executed in accordance with Louisiana law so another waiver was not necessary for

---

[47] 950 So.2d at 553 (internal quotation marks omitted).
[48] *Id.*
[49] 760 F. Supp. 1180 (E.D. La. 1991), *on reh'g sub nom. Maatke (Slimane) v. Moore*, No. CIV. A. 90-2249, 1991 WL 68276 (E.D. La. Apr. 25, 1991). *Maatki* cites a previous version of the Louisiana UM statute. La. R.S. § 22:1406(D)(1)(a)(i),(ii) (1987), *amended and recodified at* La. R.S. § 22:1295 (2011).
[50] 760 F. Supp. at 1184.
[51] *Id.*

the renewal policy.[52] In contrast, the first UM waiver in this case does not comport with Louisiana statutory requirements for waiving UM coverage, and as a result it cannot be a valid waiver for the Second Policy. *Maatki*, therefore, is inapposite.

The other case on which Atlantic relies is *Thomas v. State Farm Mut. Auto. Ins. Co.*, in which the plaintiff validly waived UM coverage in the initial policy, but argued that the rejection did not apply because the policy number on the UM waiver did not match the number on a renewed version of the policy's declarations page.[53] The court disagreed with the plaintiff, finding an incorrect policy number is insufficient to invalidate a waiver if the policy number is unavailable. A plaintiff's waiver remains in effect in subsequent versions of the policy, unless the insurer submits a new UM form.[54] As with *Maatki*, Atlantic's reliance on *Thomas* is misplaced because the initial UM waiver form in this case does not comport with Louisiana statutory requirements.

There are no material facts in dispute and there is no valid UM waiver in this case. As a result, Dotson is entitled to judgment as a matter of law that there was no valid UM waiver and, as a result, Atlantic provided Pitts $1,000,000.00 in UM coverage under the Second Policy.

---

[52] *Id.* at 1183.
[53] No. 09-CV-395, 2009 WL 2485835 (W.D. La. Aug. 12, 2009).
[54] *Id.* at *4.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the motion for partial summary judgment, filed by Plaintiff David H. Dotson, be and hereby is **GRANTED**.[55]

**New Orleans, Louisiana, this 19th day of June, 2019.**

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**

---

[55] R. Doc. 56.